The next case is Jonathan Perlman v. PNC Bank. Michael Friedman is here for Appellant Perlman and James Martin is here for PNC Bank. And Mr. Friedman, you may begin when you're ready. May it please the Court, good morning. My name is Michael Friedman on behalf of the receiver Jonathan Perlman. I'm going to focus on two points this morning, Your Honors. First, I'm going to explain that Mr. Perlman was appointed under Chapter 501 of the Florida Statutes, FDUTPA. And second, because Mr. Perlman was appointed under FDUTPA, it was an error to dismiss his claims under ISAIAH. I'm going to briefly address the standard of review before I launch into those two main points. PNC's Rule 12b1 motion to dismiss was based on the allegations of the receiver's complaint. So as the district court correctly concluded and as PNC never disputed, that makes it a facial attack, so the standard of review is de novo. In its brief on appeal, PNC argues that the district court treated the motion as a factual attack even though it called the motion a facial attack because the court considered items from the enforcement case record. But of course, in deciding a facial attack, a district court is permitted to review items that are subject to judicial notice such as the record in the enforcement case. So let me understand now. The district court made a determination that the receiver was appointed under 13b only and not also under FDUTPA. At what standard of review do we apply to that determination? Is that a finding of fact or a conclusion? It's not, Judge. It's a conclusion of law because the construction of the district court's judgments and orders is ultimately what the district court below was doing and that's a legal issue that this court reviews de novo. How do we review that? How do we review that? It's reviewed de novo, Judge. This court's held that in prior cases. There's precedent stating that a district court's . . . one district court's interpret . . . So are we going to review it de novo? Are we going to look in the record in the enforcement action to see? What I would urge the court to do is accept the receiver's allegations in the proposed second amended complaint which the district court rejected as futile . . . Why can't we go look at the record in the enforcement action and see for ourselves? I think, Judge, that the court can do that too. The court can review the record in the enforcement case itself. It's subject to judicial notice. The court can construe that record and decide for itself on de novo review what the district court . . . what the enforcement court's judgments and orders mean. Can a receiver be appointed pursuant to two separate statutes? There's no law that I'm aware of, Judge, that says he cannot. The only law on that point that I'm aware of says that he can. Yes, Judge. Absolutely. That he can? That he can. Yes. What law says? Yes, Judge. There's a . . . I believe we cite in the reply brief a district court case out of Texas holding that a receiver was appointed under two separate statutes, a federal law and a state law. And there's just no reason to . . . there's no law that I'm aware of. There's certainly none cited in the . . . in PNC's brief that suggests the enforcement court could not have relied on two separate sources of statutory authority to appoint a receiver. I hope that answers that question, Judge. And of course, the other point I want . . . so several points on the standard of review since I think I piqued your interest is, number one, this court has held that one district judge interprets another district judge's order with reference to items in the record and otherwise. That is a legal issue. It's a construction of a judgment that this court reviews DeNovo. Number two, the district court below decided it was considering a facial attack. PNC never disputed that below. And this court, therefore, under its precedent, is bound to apply the same standard . . . the same analysis, a facial attack standard, which is subject to DeNovo review. Your Honor, I'm going to move on to my main point. I hope I've addressed that point for you. It's obviously important. But coming and going, we believe that this court is bound to apply a DeNovo review standard to the district court's facial attack analysis below. So what does the enforcement court record show? We believe . . . the receiver believes that the totality of the enforcement case record supports that he was appointed under FDUTPA, more specifically Section 501.207. What happened in the enforcement case? Well, the Florida Attorney General brought an action under FDUTPA, and in its complaint, the Florida AG asked for a receiver to be appointed under Section 501.207. That's paragraph 90 of the enforcement case complaint. Not only that, but that complaint goes out of its way to clearly delineate the Florida AG's request for relief, including a receiver, under Section 501.207, as distinct from the FTC's request under the FTC Act. Judge Schofflat wrote an opinion in Isaiah v. J.P. Morgan Chase. That opinion says that a complaint by a receiver alleging a common law tort must allege an allegation that the receivership entities and the receiver was appointed to protect . . . that they were appointed to protect as an innocent stockholder or innocent shareholder. And there's nothing in the complaint. There's no allegation in the complaint to that effect. What I . . . fundamentally what Isaiah holds is that whether a receiver can bring these types of claims, Florida common law tort claims, is a matter of Florida law. And so the specific holding in Isaiah, right, the specific holding, which is informed by the question of whether there are innocent stockholders, is whether the fraudulent acts of the receivership entities are imputed to the receiver. Imputation is the key issue under Isaiah for purposes of tort claims under Florida law. That's Isaiah at 1305. There's no allegation in the complaint that there are any innocent stockholders or shareholders in the receivership entities. None. No allegations. That is correct, Judge. There is no such allegation. And I understand why you're focusing on that, because that was the focus in Isaiah. Because in Isaiah, the court applied Freeman, which applied general rules of corporate law and receivership law, to decide whether the bad guy's acts in that case were imputed to the company. And those general principles of corporate and receivership law can be informed by whether there is an innocent stockholder who might form a basis to conclude that the fraud should not be imputed to the entire company. Sure. But in this case, there's no need for an opportunity to amend your complaint. You couldn't add that allegation, could you? No, Judge. No, that's true. And we don't need that allegation because there's a statutory basis to refuse to impute the bad actor's fraud to the company. And that is Section 501.2073. That statute permits a receiver appointed in the specific circumstances of this case, an enforcement action brought by the Florida Attorney General to bring actions without regard to any wrongful acts that were committed by the enterprise. So again, focus. Let me ask you a question about that. In Isaiah, it was a different statute, a different Florida statute that was at issue, right? I mean, it was, I think it was FFTA. And there was no reservation or there was no statement in that statute that the receiver did not stand in the shoes of the entity whose position it was, I guess, taking. The critical distinction between this case and Isaiah is that Isaiah applied, as you pointed out, it was a general receivership under the court's general equitable powers appointed at the request of a private plaintiff. Unlike this case, where the receiver was appointed at the request of the Florida Attorney General under its statutory authority under 501.207. So in this case, there is a specific statute precluding the imputation that deprived the receiver of the ability to bring a cause of action in Isaiah. There was no such statute at issue in Isaiah. And that is the critical distinction here. And I see that my time has expired, so I'll reserve some time. Mr. Friedman, we'll hear from Mr. Martin. Good morning, Your Honors. May it please the court, James Martin for Defendant PNC. As the briefing on the merits appeal and the carry forward motion show, there are four dispositive reasons that the district court's judgment should be affirmed. The first is, as a threshold matter, the receiver has no standing because under the Supreme Court's decision in AMG Capital with the appointment under FTC Section 13B, the receiver has no authority to bring an action in common law toward pursuant to that statute. Also, as we pointed out . . . I'm sorry, can I ask you a question about that? Yes. Would you agree, though, that if the receiver was also appointed pursuant to Florida law, that that would not necessarily govern? The AMG Capital decision would not necessarily govern as a matter of standing, that's right. But as I said, there are four dispositive reasons for a dismissal. So if we get there, it still doesn't matter. The second is that the receiver's action here is governed by ISAIAH on the factual record as Judge Wilson alluded to. Wasn't FDAPTA amended to allow for a receiver of that nature and not be considered standing in the shoes of the entity that it's now representing? Your Honor, the answer to that unequivocally is no. FDAPTA was not amended to accomplish that. Nothing in the statute says that and nothing in that Senate report that's cited as the source of that analysis says it either. FDAPTA, to begin with, allows for pursuit of statutory violations and actions that pursue statutory violations. It is 100% clear on that from beginning to end. And there is no Florida case that provides to the contrary. If FDAPTA was the source of the receiver's claims, he can't bring third party toward claims because FDAPTA authorizes only the pursuit of violations of the statute. Can I ask you a question then? What does this language mean without regard to any wrongful acts that were committed by the enterprise? That's the language that was added, right? That's correct. And as the Senate report says, with respect to actions brought for violations of the statute then that wrongful conduct doesn't matter. What the receiver is trying to do is take that limitation and remove it and say that that language read in isolation enfranchises him to bring any kind of common law toward claim and there is no authorization in the statute for that. But even if there was, the statute has an exemption for federally regulated banks and PNC is a federally regulated bank. So the statute itself is not a source for this appointment because the statute doesn't apply to the bank in the first instance. This argument in the end, your honors, is incongruous. The state of Florida could not bring this case but the receiver now says because he was appointed pursuant to that section, which he wasn't, he is enfranchised to get by all of these limitations and supposedly be carrying out the intent of the state of Florida when it's clearly contrary to the statute. The receiver says that the order appointing the receiver in this case expressly authorizes the receiver to bring tort claims and that's what makes this case different from Isaiah v. J.P. Morgan. Yes, and your honor, that's an over reading of the record in the enforcement action in all its particulars. There is no pleading, brief, motion, order, or anything in that enforcement action that authorizes the receiver to do anything in terms of common law tort actions pursuant to 501.207.3. Full stop. In fact, the enforcement action was about violations of FDUPTA, the very claim that he admits he is not pursuing here and of course, as I said, cannot be pursued here. The second thing is that the idea that you could cobble together the pleadings in that action to create the specific appointment authority that he wants doesn't work either. Let me ask you a question. You would agree that there are filings in the enforcement action where the court, in fact, the final default judgment explicitly authorized the receiver to investigate the affairs of the corporate defendants and quote, institute such actions and legal proceedings for the benefit of the corporate defendants, creditors and consumers as the receiver deems necessary against third parties including but not limited to claims in contract law tort and equity. It purports to do that. Your position is it doesn't matter that it purported to do that because there was no authority for it to do so. Is that what your position is? Because it can't possibly be that it didn't authorize that the enforcement court didn't authorize or purport to authorize the receiver to file tort actions. Yes. So, your honor, I agree there is a distinction between appointment and authorization and it's an important one. And it is the failure to appoint the receiver to do that in the enforcement action that leads to our argument. The authorization in the abstract also cannot enfranchise the receiver to do things that the FDUCTA statute, which is the source of his appointment, expressly prohibits. So, we end up at a dead end anyway. So, you agree that the FDUCTA statute is a source of his appointment? I do not, your honor. I don't think you can get that from the enforcement action because there Why does it matter, though, if you're arguing that if it is a source of his appointment, he still can't bring these actions? Well, it gives me more than one argument for affirmance, doesn't it, your honor? Because if I'm right, that the enforcement action doesn't provide the authorization, I'm sorry, doesn't provide an appointment under 5012073. And again, there is nothing in the enforcement action from beginning to end that suggests that. I mean, I guess I disagree with you. It does seem to me that when you look at the course of the filings and all of the filings that are in here, the court is repeatedly issuing orders that are authorizing the receiver to do things like file claims and contract law, tort and equity, do things that only the state receiver could do, only if the receiver had been appointed pursuant to state authority. So, it seems to me like it's pretty clear that the receiver was appointed pursuant to both, which to me, at least, would bring us to the next question, which is another argument you're making, which is it doesn't really matter because even if the receiver had been appointed under FDOTPA, the court did not have the power to authorize the receiver to file claims in tort and other such things because all the receiver could do was file FDOTPA authorized claims and those aren't FDOTPA authorized claims. Is that right? Is that what you're arguing? And the PNC, in addition, is exempt from FDOTPA altogether by the plain terms in 501.212. So, it's a double hit. There is a fourth argument underneath all of this as well, your honors. Let's assume that we get through to the notion that there was an appointment under 501.207.3, which we say there was not. Not even, your honor, under a generous reading of the enforcement action. Second, even assuming that we are going to go against the clear intent of the Florida legislature and allow for something beyond violations of FDOTPA to be pursued under FDOTPA and we're going to get by the exemption, which says that PNC can't be sued pursuant to the statute, period. There's still a lack of standing here for the reasons that Isaiah said under Article III and no state statute can confer standing. Well, so I think Isaiah, and I was on that panel, by the way. Yes. I think what Isaiah was saying was it was looking at state law to determine whether there was a cause of action. And in Freeman, the state had said you have to look at it to see if there are any innocent parties, right? You don't have standing to bring a claim under FFTA if the entity that the receiver is representing did not have any innocent parties to it because you can't bring an aiding and abetting kind of claim when you're involved in the aiding and abetting, right? Your honor, at the risk of getting myself into hot water, I will disagree that that is the analysis in Isaiah. And I say that with respect, recognizing that you were part of the panel. All right. Isaiah raised the standing issue, which he called it sua sponte, because where there are no innocent officers, directors, or shareholders, it's not just about aiding and abetting. It's about that there's no injury sustained by the entities that the receiver represents. And that is a perfect parallel to this case, even under 501-207-C3. So your position is that the state then cannot authorize what you're describing as Article III standing, which, you know, under FDOTPA. Is that what you're arguing? Yes. And actually, this court agrees with me on that, and so does the U.S. Supreme Court. So Article III standing demands that there be injury that is actual. Why isn't there injury here, though? I mean, there is injury. To whom, your honor? To the receiver and to the entity. I mean, the entity and to the entity here, the entity, obviously, is not able to function any further. I mean, it's had monies taken from it. But your honor, if we follow through on the analysis in Isaiah, having the entities in play doesn't produce actual harm. And the reason it doesn't is because they are the scheme. They haven't sustained any harm, and that is still true under the present fact scenario that we have. Now, let's turn to what Florida could do about that. Could Florida turn an Article III finding of no actual harm into harm just by having a statute that authorizes the receiver to proceed? The answer to that is no. The Supreme Court said no to that in Spokio. This court said no to that in Mortgage Investors. There has to be no actual harm. You're talking about the concrete element. I mean, that's what Spokio is about. There's no concrete and particularized harm, really, the concrete element. And it seems to me that there is a concrete injury to the defendant here, I mean, to the receiver, to the entity. It does not have the money that it had. Its money was not spent the way that it was intended to be spent. It was raided. The entity itself has been raided. And so, it seems to me that when you're looking at the and all of those other cases that you're referring to, there is a concrete injury here. And so, the state then can authorize a remedy. Why can it not do that? Okay. So, getting myself back into hot water again, looking at Isaiah and its distinction of the O'Halloran case, Your Honor's analysis doesn't hang together because the receivership entities here are not cleansed in the fashion that is envisioned where there would be harm to the entities who don't have the money. That's the O'Halloran analysis. And they're not cleansed because they are, in fact, the wrongdoer. And the wrongdoer can't itself. So, Isaiah makes this exact distinction. In an effort to cleanse these entities and provide some level of harm is in direct conflict with the holding in Isaiah, its analysis regarding O'Halloran in the footnote, and then at the end of the day, also Article 3 because the standing cases that I mentioned deal with actual harm and concrete injury. And even if they didn't, both elements are required under Article 3 indisputably. I see my time is up. Unless there are further questions, we would urge the court to affirm. Thank you, Mr. Martin. We have your argument. Mr. Friedman, you've reserved some time for rebuttal. Thank you, Your Honor. The first thing I want to do, Judge Wilson, is direct you to footnote 8 of the receiver's reply brief, which discusses the Federal Savings and Loan Insurance Court Bank out of the Northern District of Texas, which addresses the idea that a state law receiver and federal law receiver can be the same person at the same time. And certainly, if that's an issue that's troubling the court, I would welcome the opportunity to brief it further. I want to just briefly touch on AMG, which I think the court correctly indicated in its questioning is really irrelevant to this case. We're not arguing that we have standing under the FTC Act. Our argument is that we're allowed to proceed because of FDUCPA. I also want to clarify that it's not— I'm still troubled by Isaiah versus J.P. Morgan, Chase. Okay, Judge. The receiver steps into the shoes of the receivership entities. Is that correct? That is correct, Judge. Okay. And so, you know, how do you have an injury without an innocent receivership—without a stakeholder? I don't understand that. You can do that. Thank you, Judge. I'm glad for the opportunity to clarify that for you. What Isaiah makes perfectly clear is that it's not the existence of an innocent stakeholder, per se, that creates injury. It's whether the bad conduct of the prior management is imputed to the receiver. The issue is of imputation. And therefore, the reference to innocent stakeholders, again, in Isaiah is merely a reference to the general principle of Florida corporate law that if you have an innocent stakeholder, then the bad acts of one member of management may not be imputed to that corporate entity. So that is the significance of the reference to the presence or absence of innocent stakeholders in Isaiah. Here, that analysis is really not relevant because of the statute, 501.207, that steps in to interrupt the state law imputation that would otherwise occur in the absence of an innocent stakeholder. So it's just a different source of law to interrupt the imputation that troubled the panel in Isaiah. Excuse me. Are you saying that 501.207 applies across the board to every corporation in any claim by anybody that now state law makes a corporation different from its officers, none of whom are innocent? No, no, Judge. It's only in the relatively narrow circumstances of a case like this one, where the Florida attorney general invokes that statute, 501.207, to bring an enforcement action and obtains an order from the court, like the order that the AG obtained from the enforcement court in this case, saying, you can go ahead and bring claims on behalf of the entities in receivership. So it's relatively, it's not upending Florida corporate common law. It's a relatively narrow statute that applies in relatively narrow circumstances. We just happen to be in those circumstances. So now, you just have like four minutes left now. Yes, Judge. So if we go back to the record in the enforcement action, do we have that record? Yeah, Judge, we submitted an appendix with the relevant, yes, record items. Yes. And so it's clear, it's clear in that record that the receiver was appointed pursuant to the Florida Act. Again, Judge, the state AG brought the cause of action under the applicable statute. It asked for a receiver citing that statute. Yeah, I'm not concerned with what they asked for. I'm concerned more with what the district judge said. I'm appointing this receiver pursuant to this statute, or am I appointing the receiver pursuant to the other statute? And it doesn't say, it's silent on that issue, Judge. The suggestion that, well, there's no specific support for the idea that the receiver was appointed under PDUCPA. But the district judge in this case said he was appointed pursuant to the federal statute. That's correct, Judge. And so, you say we're reviewing this de novo, and so, I mean, if we're reviewing it de novo, I want to go look at the record in the enforcement action, but there's nothing in the enforcement action. So, how much deference do we owe the district judge in this case? I mean, we're the Court of Appeals, and the district judge made a decision. And so, we got to decide how we're going to review that decision. And it seems to me like unless it's clearly erroneous, unless it's a clearly erroneous decision, we're going to give the district judge the benefit of the doubt here. And that's just not the standard, Judge. That's not the standard when the district judge is, A, considering . . . So, how do we exercise our de novo review, then, if it's not clear in the enforcement action? I think there are two exercises that the court can engage in. One is clear the court could go back and look at the enforcement record itself, all of which is judicially noticeable, and make its own de novo determination. We go back and look, and it's just unclear. If it's just unclear, Judge, then you default to the facial challenge standard. PNC made a facial challenge. The receiver moved to amend his complaint under the liberal amendment standard to specifically plead the facts that show the receiver was appointed under feducta. Again, the facts, some of which I've started to enumerate for you, all of which are enumerated . . . Then that goes back to, I'm more concerned with what the district judge said. It's the district judge that appointed the receiver. Enforcement action. It's what the district judge . . . I'm concerned with what the district judge said. I just want to make sure I understand, because there's two district judges, Your Honor. I'm talking about, right, in the enforcement action. Right, right. So, absolutely, Judge. And I think that is critical, and I agree with you completely on that score. So what did the enforcement . . . we call them the enforcement court in the brief. What did the enforcement court do? Well, he entered a temporary restraining order on the Florida AG's motion, and he found good cause to believe that the defendants were violating feducta, and that immediate and irreparable harm would result, unless those feducta violations were enjoined, and he appointed a receiver. So those findings are completely extraneous to the enforcement court's temporary restraining order, unless he was appointing a receiver under feducta. Let me ask you something. We know from AMG that a receiver appointed under the FTC Act cannot engage in any kind of tort actions or common law type actions. Isn't that right? I'm not sure that AMG says that to such a fine point, Judge, but I think I agree with your general premise. That's the natural import of it. Okay. But in the enforcement action, the district court, in its final default judgment, authorized the receiver to file tort actions, et cetera. Under the common law actions, I guess. So that being the case, I guess we can come to one of two conclusions. Or maybe there's more, and you can tell me. Either the district court mistakenly thought that a receiver appointed solely pursuant to the FTC Act could engage in these actions, or if we want to give the benefit of the doubt to the enforcement court, then the enforcement court had to have appointed pursuant to feducta, of course, subject to the objections from your colleague over here that he couldn't have done that either. But I mean, isn't that really the only way to look at that? To me, I've thought about the exact question you're asking. I think what the court is being asked to do is to decide that the enforcement court did one of two things. It erred and entered an unenforceable order that it did not have the authority to enter, or it granted the Florida AG's request and granted the receiver authority that it did have the authority to enter under feducta. Either you're going to- There's really, I guess, a third option too, which is what your colleague is saying. Even if we assume that it was granted under feducta, the enforcement court still didn't have the authority to do it. Right, and that raises questions of statutory construction, which I wish I had more time to address with you, and I'm happy to, but they're addressed in the brief. Suffice to say that to accept those arguments requires the court to read language into the statute. But in any event, we're reviewing the district court's decision in this case, right? Correct, Judge. And so, I guess I'm still struggling with how we review that, the measure of deference that we give to the district court's decision in this case. Right, and I would commend the court to look at Alley versus the Department of Health and Human Services. That's cited in the initial brief that we filed in our standard of review, which says specifically that when one district judge reviews a judgment or an order entered by another district judge, which is exactly what happened here, this court provides that interpretation with zero deference. It is a de novo standard of review because at bottom, what the interpretation of an order or judgment is, is a legal conclusion that this court reviews de novo. I'm concerned with the measure of deference that we give the district court's decision in this case. And again, Judge, I hope I'm trying to address that issue because, again, what the district court did in this case is decide what the enforcement court did in its judgment in another case. If it's a finding of fact, if we construe it as a finding of fact, then we would afford clear error, right? If you construe it as a finding of fact, but this court's precedent requires you to not do that. In the Douglas case, which we cite at our reply brief at page five, this court has held whatever analysis the district court below adopts. She says, I find that the receiver was appointed pursuant to the federal act, period. You say that's a conclusion of law and not a finding of fact? It's a construction of the judgment of what the enforcement court was doing in its judgment. Did the district court here describe what it was doing as reviewing a facial attack? Yes. Yes, Judge. So when the district court reviews a facial attack, are there factual findings involved? No, Judge. No, there are not. So in order for us to find that we had to apply or that clearly erroneous review was applicable, we would have to find that it was not a facial attack and that the court itself and the district court action here was mistaken in so describing its review, I guess. You would need to do that despite the fact that PNC never appealed that or challenged it below and essentially sandbagged the district court by raising that issue for the first time on appeal. That's right, Judge. And again, there's case law from this court, the Douglas case, which I just mentioned, which says, no, you don't do that on appeal. Whatever the district court below thought it was doing, characterized its task as being, that is the standard of a review that this court applies. And the district court below expressly, unequivocally, unambiguously said it was applying a facial attack analysis in which no findings of fact are made. And so the district court knew that this issue was going to come up on appeal. But the district court, I mean, what we're reviewing here is the district court's finding that the receiver was appointed pursuant to, what is it, 13B. That's what we're reviewing. Respectfully, I think it would be more accurate to say, Judge, that what you're reviewing is the district court below's interpretation of whether the enforcement court, in its judgments and orders, invoked FDUCPA. And that court, this court, are both authorized to look at the record in the enforcement case, take judicial notice to inform that legal construction. But it's not a fact-finding mission. PNC never argued below it was a fact-finding mission. The district court below did not believe it was on a fact-finding mission, having expressly said that PNC is making a facial attack and then applying the case law and the analysis that goes with a facial attack. All right. Well, it's an interesting case. We'll let you go way over. We appreciate your argument. Thank you so much for the time, Your Honor. I hope I was able to answer your questions. Okay.